UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DANIEL COOK,

                    Plaintiff,                        Case No. 1:22-cv-630

v.                                            Honorable Robert J. Jonker

UNKNOWN LEITHEIM et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia,

Ionia County, Michigan. Plaintiff sues Warden or Deputy Warden Unknown Party, Lieutenant Unknown Leitheim, and Correctional Officer C. Metiva.

Plaintiff alleges that he was transferred to ICF on April 1, 2021, for scheduled surgery. (ECF No. 1, PageID.4.) Upon arrival at ICF, he was placed in an observation cell with a camera, even though he was not suicidal or homicidal. (*Id.*) Plaintiff "was content with being under a camera because he feared being assaulted or retaliated against by ICF staff" because of the "past treatment he went through there and him bringing and pursuing legal action regarding their conduct." (*Id.*)

Plaintiff stayed in the observation cell for two weeks "in the same outfit and underclothes that he transferred into ICF wearing. (*Id.*) Plaintiff received his property two weeks after his transfer. (*Id.*) On the morning of April 22, 2021, Officer Way (not a party) and Defendant Metiva denied Plaintiff breakfast. (*Id.*, PageID.4–5.) Plaintiff was then told that he "was being moved from the observation cell down the hall where prisoners were being segregated for serious assaults." (*Id.*, PageID.5.) Plaintiff objected to the move and requested to speak to the psychiatrist regarding "his fear and distress." (*Id.*) His requests to do so were denied. (*Id.*) Defendant Leitheim ordered Plaintiff to allow staff to remove him from the observation cell and take him to the other cell. (*Id.*) Plaintiff responded that he "wanted to remain under the camera and speak with his psych." (*Id.*) Defendant Leitheim then issued Plaintiff a misconduct for disobeying a direct order. (*Id.*)

An hour later, Defendants Metiva and Leitheim came to Plaintiff's cell and directed him to "back to the door and cuff up to be moved." (*Id.*) Plaintiff told them he feared retaliation and was "in serious fear for his life" if he was moved "out from under a camera." (*Id.*) Defendant Leitheim refused Plaintiff's request to speak to a psychiatrist and told Plaintiff that he would be physically

moved by the Emergency Response Team (ERT) if he did not comply. (*Id.*) Plaintiff complied because he had suffered assaults by the ERT before. (*Id.*)

Plaintiff was moved to cell 35 in a unit that he alleges serves as a "punishment wing for serious misconducts." (*Id.*, PageID.6.) Plaintiff claims that he was the only one on that wing for fighting. (*Id.*) After being moved to cell 35, Plaintiff noticed the mattress was "destroyed." (*Id.*) He notified Defendants Leitheim and Metiva, as well as Officers Elliot and Way. (*Id.*) They ignored his "pleas" and walked away. (*Id.*) Defendant Metiva returned to the observation cell to pack Plaintiff's property. (*Id.*)

Plaintiff alleges that there was a "huge lump" in the middle of the mattress and that the "whole foot" was torn open. (*Id.*) There was also no casing. (*Id.*) Plaintiff notified the unit officer that he thought there was something in the mattress and did not want to be charged "if it is a shank or other type of contraband." (*Id.*) Plaintiff was told to "live with it" and that he would not get a new mattress. (*Id.*)

Defendant Metiva and Officer Way brought Plaintiff's property to him. (*Id.*) When Plaintiff was removed from his cell so that his property could be brought in, he told the officers to remove the mattress "because not only was it destroyed but he also believed there was a shank in it." (*Id.*) Defendant Metiva took the mattress; Plaintiff's requests for a new mattress and a pillow were ignored. (*Id.*) Defendant Metiva then issued Plaintiff a misconduct for destruction or misuse of state property, claiming that Plaintiff "completely ripped the mattress apart." (*Id.*) Plaintiff contends that the misconduct was fraudulent because the mattress was already destroyed. (*Id.*) As a result, Defendant Leitheim asked either Deputy Warden Sandborn or Warden Davids to place Plaintiff on a 30-day mattress restriction. (*Id.*, PageID.7.) Defendant John Doe authorized the restriction for 30 days. (*Id.*)

Plaintiff alleges further that cell 35 had dirty and unsanitary floors and walls, and that there were "bugs and insects everywhere." (*Id.*) The bed slabs had "restraint brackets that run across the width of the bed slab with bolts and eyelets that [rise] above the slab [by] inches." (*Id.*) Plaintiff claims that it was "impossible" to sleep on the bled slab, even with three blankets, because it caused him "serious pain." (*Id.*) Plaintiff "moved his makeshift blanket pallet to the floor that was unsanitary and full of insects/bugs." (*Id.*) He suffered from insect bites for "nearly 30 days." (*Id.*) Plaintiff also experienced "so much pain from sleeping on the hard cold surface." (*Id.*) Plaintiff "continued to raise these issues with medical during their rounds and even submitted medical requests for pain medication and intervention." (*Id.*) He further alleges that his "sleep pattern was interrupted" and that his "daily activity was affected with low energy, pain, fear, depression[,] and more." (*Id.*)

Plaintiff contends that he was denied participation in the misconduct hearing process for the two misconducts noted above. (*Id.*) Plaintiff appealed and continued to "grieve to everyone who passed his cell." (*Id.*) After "suffering these hardships for nearly 30 days," Plaintiff was granted a rehearing on appeal. (*Id.*, PageID.7–8.) During the rehearing, Plaintiff was found guilty of disobeying a direct order but found not guilty for destruction of state property. (*Id.*, PageID.8.) He was given a new mattress. (*Id.*) Subsequently, Plaintiff told Defendant Leitheim that he should apologize. (*Id.*) Defendant Leitheim responded, "Just die!" (*Id.*) When Officer Bedman (not a party) was replacing Plaintiff's mattress, Plaintiff told him that "he was placed on mattress restriction for a mattress in the same condition." (*Id.*) Officer Bedman told Plaintiff that he was "lucky that he did not get a case for the shank they ended up finding in that mattress." (*Id.*)

Plaintiff alleges further that when he was placed on mattress restriction and officers were placing the mattress restriction sign on his cell door, other inmates "started objecting to the

restrictions stating that Plaintiff did what he was suppose[d] to do by 'immediately' notifying them the mattress was destroyed." (*Id.*) Plaintiff "wasn't even in the cell with the cuffs off of him before he started notifying officers and the Defendants." (*Id.*) Plaintiff also contends that his cell was never properly inventoried by Defendant Metiva and that he never received a cell inventory checklist pursuant to MDOC policies. (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his Eighth and Fourteenth Amendment rights. (*Id.*, PageID.4.) Plaintiff also asserts claims for intentional infliction of emotional distress and negligence under state law. (*Id.*) A liberal reading of Plaintiff's complaint also suggests that he could be raising First Amendment retaliation claims. Plaintiff seeks compensatory and punitive damages, as well as "protection from future retaliation." (*Id.*, PageID.9.)

## II.    Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      First Amendment Retaliation Claims

Throughout his complaint, Plaintiff alleges that he feared retaliation from Defendants and other officers at ICF because of "the past treatment he went through there and him bringing and pursuing legal action regarding their conduct." (ECF No. 1, PageID.4.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See*

*Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff merely alleges the ultimate fact of retaliation in this action. While filing a civil rights lawsuit constitutes protected conduct, *see Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002), nothing in Plaintiff's complaint can lead to an inference that Defendants were even aware of Plaintiff's prior litigation activity. Plaintiff merely concludes that because he engaged in litigation regarding his prior period of confinement at ICF, Defendants' actions must have been motivated by that litigation. Plaintiff's speculative allegations simply fail to state a plausible claim for relief. The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claims.

B.      **Eighth Amendment Claims**

1.      **Conditions of Confinement**

Plaintiff takes issue with various conditions of his confinement at ICF, including: (1) his placement in the observation cell "for two weeks in the same outfit and underclothes that he transferred into ICF wearing" (ECF No. 1, PageID.4.); (2) denial of breakfast on one occasion; (3) his placement on mattress restriction; (4) placement in a cell that was dirty and infested with insects; (5) issues with the metal bed frame; and (6) disruptions of his "sleep pattern" and "daily activity" (*id.*, PageID.7).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a.     Temporary Denial of Clean Clothes

Plaintiff first suggests that he was placed in the observation cell at ICF "for two weeks in the same outfit and underclothes that he transferred into ICF wearing." (ECF No. 1, PageID.4.) However, "temporary inconveniences" do not suffice to state an Eighth Amendment conditions of confinement claim. *See Powell v. Washington*, 720 F. App'x 222, 228 (6th Cir. 2017) (citing *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001)). With regard to clean clothing, "[i]n this Circuit, a prisoner's claim of denial of clean clothes for a brief time fails to state an Eighth Amendment violation." *Bostic v. Mehr*, No. 20-1031-SHM-cgc, 2021 WL 5999305, at *5 (W.D.

Tenn, Dec. 20, 2021) (citing *Walker v. State Dept. of Corr.*, No. 98-6586, 2000 WL 32057, *1–2 (6th Cir. Jan. 7, 2000)); *see also Wright v. Gregory*, No. 1:21-cv-P79-GNS, 2021 WL 4037594, at *4 (W.D. Ky. Sept. 3, 2021) ("[T]he temporary inconvenience of . . . not having clean clothes . . . during Plaintiff's nine-day placement in segregation fails to state a claim upon which relief may be granted."); *Jackson v. Powell*, No. 1:18-cv-466, 2018 WL 3722158, at *8 (W.D. Mich. Aug. 6, 2018) ("Plaintiff's alleged temporary deprivations of hygiene items, exercise yard, and laundry service amount to minor inconveniences that do not rise to the level of an Eighth Amendment violation.") Certainly, if a lack of clean clothing results in some actual harm, it might rise to the level of an extreme deprivation. *Brown v. Timmerman-Cooper*, No. 2:10-cv-283, 2013 WL 430262, at *2 (S.D. Ohio Feb. 4, 2013) ("The denial of laundry facilities or clean clothes may also constitute an Eighth Amendment violation, but only when the inmate claims to have 'suffered a physical injury or a disease as a result of these conditions.'"); *Hill v. Matthews,* No. 1:19-cv-853, 2020 WL 502607, at *10 (W.D. Mich. Jan. 31, 2020) (same); *Presley v. LMPD*, No. 3:16CV-118-TBR, 2017 WL 581325, at *4 (W.D. Ky. Feb. 13, 2017) (same); *Morris v. George*, No. 1:13-cv-00029, 2013 WL 2384330, at *3 (M.D. Tenn. May 30, 2013) (same). Plaintiff, however, has not alleged any facts to suggest that he suffered actual harm from the temporary denial of other clothing. The Court, therefore, concludes that Plaintiff has failed to set forth a plausible Eighth Amendment claim regarding the temporary denial of clean and other clothing while in the observation cell.

### b.      Denial of Breakfast

As noted *supra*, Plaintiff contends that Defendant Metiva and Officer Way denied him breakfast on one occasion. (ECF No. 1, PageID.5.) "The Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x

509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution "does not mandate comfortable prisons," however. *Rhodes*, 452 U.S. at 349. Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *see also Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (finding the deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (finding the denial of a few meals over several months does not state a claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (finding the deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim). Plaintiff's allegation that he missed one breakfast falls far short of stating a claim under the objective prong of the deliberate indifference standard. Thus, any Eighth Amendment claim premised upon the one-time denial of breakfast will be dismissed.

### c.   Placement on Mattress Restriction

Plaintiff also avers that he was placed on mattress restriction for nearly 30 days and had no mattress in cell 35 because of that restriction. (ECF No. 1, PageID.7.) He states that during this time, he "moved his makeshift blanket pallet to the floor." (*Id.*) Plaintiff was "in so much pain from sleeping on the hard cold surface." (*Id.*)

While unpleasant, Plaintiff's temporary placement on mattress restriction fails to state an Eighth Amendment claim. "The level of discomfort and injury one might expect a prisoner to suffer by virtue of sleeping without a mattress for a few days simply cannot support a claim that the prisoner has been denied 'the minimal civilized measure of life's necessities.'" *Lee v. Wagner*, No. 1:17-cv-474, 2017 WL 2608752, at *4 (W.D. Mich. June 16, 2017) (quoting *Rhodes*, 452 U.S. at 347). Despite variations on: (1) the reason for the restriction; (2) the duration of the restriction; (3) the susceptibility of the prisoner to injury; and (4) the alleged injury, the courts in the Sixth Circuit have routinely rejected Eighth Amendment claims for mattress restrictions.[1] Likewise, the

---

[1] *See Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) ("In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment."); *Jones v. Toombs*, No. 95-1395, 1996 WL 67750 (6th Cir. Feb. 15, 1996) (prisoner denied mattress for two weeks); *Carter v. Hickok*, No. 1:14-cv-1099, 2016 WL 4727427 (W.D. Mich. Sep. 12, 2016) (prisoner was deprived of mattress for four days because of damage to the mattress, prisoner suffered from Multiple Sclerosis, loss of mattress resulted in exacerbation of MS, pain in hips, back, and thighs, anxiety, depression, humiliation and discomfort and sleep deprivation); *Peterson v. County of Monroe*, No. 12-cv-11460, 2014 WL 1328205 (E.D. Mich. Mar. 28, 2014) (prisoner deprived of mattress for four days, contended that he suffered "frostbite" as a result, court concluded undisputed evidence showed only light bruising and dry skin); *Bean v. Tribley*, No. 2:11-cv-427, 2012 WL 2317580 (W.D. Mich. Jun. 18, 2012) (prisoner used mattress to facilitate a sexual misconduct violation, mattress removed for seven days with no substitute, despite documented history of back problems); *Sanders v. Smith*, No. 1:11-cv-892, 2011 WL 5921246 (W.D. Mich. Nov. 27, 2011) (prisoner deprived of mattress, sheets, and bed coverings for 38 days following placement on suicide watch and misconduct charge for destruction of property, even after officials removed plaintiff from suicide watch and he was found not guilty of property destruction); *Seay v. Prince*, No. 1:10-CV-P59-R, 2010 WL 3340599 (W.D. Ky. Aug. 20, 2010) (prisoner with "bad back" denied mat and forced to sleep on the floor for two 48-hour periods and one 24-hour period, but court found no Eighth Amendment violation); *Jones v. Carberry*, No. 2:08-cv-268, 2010 WL 1172562 (W.D. Mich. Mar. 24, 2010) (prisoner deprived of mattress for 39 days after receiving major misconduct ticket for destroying his mattress, plaintiff suffered general discomfort and back pain as a result); *Robinson v. McBurney*, No. 2:07-cv-85, 2009 WL 440634 (W.D. Mich. Feb. 23, 2009) (prisoner deprived of mattress in close observation cell following suicide attempt, deprivation for only one day, mattress was removed under mistaken belief that it had to be removed for proper suicide watch); *Carter v. Ricumstrict*, No. 07-13311, 2008 WL 4225844, *2 (E.D. Mich. Sep. 10, 2008) (prisoner deprived of mattress several times for fixed periods of time because he used it to facilitate sexual misconduct violations, prisoner suffered from Multiple Sclerosis and loss of mattress caused "aches and pains and constant muscle spasms"); *Reed v. Rutter*, No. 2:08-cv-200, 2008 WL 4741724 (W.D. Mich. Oct. 24, 2008)

Court of Appeals for the Ninth Circuit has concluded that requiring a prisoner to sleep on the floor for a four-week period without a mattress does not violate the Eighth Amendment. *See Schroeder v. Kaplan*, No. 93-17123, 1995 WL 398878, at *2 (9th Cir. July 7, 1995). While Plaintiff alleges that he suffered pain from sleeping on the floor without a mattress, that fact does not rise to the level of an Eighth Amendment violation. *See Brandon v. Bergh*, No. 2:09-CV-179, 2009 WL 4646954, at *3-4 (W.D. Mich. Dec. 8, 2009) (finding that prisoner's claims that he was required to sleep on a blanket on the floor, which was uncomfortable and caused him to suffer a variety of aches and pains, prompting him to seek help from health services, failed to show that he suffered any serious medical problems as a result of his mattress restriction); *Pullum v. Herman*, No. 1:05-CV-365-TS, 2005 WL 2756729, at *2 (N.D. Ind. Oct. 25, 2005) (finding that sleeping on the floor, even though prisoner alleged back pain from doing so, did not deprive prisoner of the minimal civilized measure of life's necessities). Plaintiff's Eighth Amendment claims concerning placement on mattress restriction for nearly 30 days will, therefore, be dismissed.

### d.    Cleanliness of the Cell

Plaintiff contends that cell 35 had "dirty and unsanitary floors and walls with bugs and insects everywhere." (ECF No. 1, PageID.7.) While those conditions are certainly unpleasant, Plaintiff's complaint fails to plausibly assert that he was forced to live in inhumane conditions. *See Logan v. Mich. Dep't of Corr.*, No. 1:21-cv-791, 2022 WL 325404, at *10 (W.D. Mich. Feb. 3, 2022) (concluding the same regarding inmate's Eighth Amendment claim concerning cleanliness

---

(prisoner used rolled up mattress as a platform to commit sexual misconduct violation, he was without any mattress or substitute for five days); *Kelly v. Holman*, No. 2:07-cv-206, 2007 WL 5335188 (W.D. Mich. Dec. 14, 2007) (prisoner deprived of mattress for seven days following misconduct ticket, suffered back problems as a result), *report and recommendation adopted in relevant part*, 2008 WL 2795573 (W.D. Mich. Jul. 18, 2008); *Jarrett v. Bouchard*, No. 2:05-cv-195, 2006 WL 2632460 (W.D. Mich. Sep. 13, 2006) (prisoner deprived of mattress for four days after rolling mattress up and using it to strike at cell window).

of his cell in ICF's segregation unit); *cf. Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (concluding

that a prisoner who alleged that he was placed in "shockingly unsanitary" cells for six days, one

of which was covered in "massive amounts" of feces and the other of which was equipped with

only a clogged drain to dispose of bodily waste, stated a violation of the Eighth Amendment);

*Taylor v. Larson*, 505 F. App'x 475, 477 (6th Cir. 2012) (concluding that a prisoner who alleged

that he was forced to remain in a cell covered in fecal matter for three days stated a claim under

the Eighth Amendment). Moreover, Plaintiff's complaints about insects in his cell fall short of

demonstrating "conditions intolerable for prison confinement." *See Rhodes*, 452 U.S. at 348; *see

also Brooks v. Daniels*, No. 3:12CV-P446-S, 2012 WL 3866453, at *2 (W.D. Ky. Nov. 1, 2012)

("While unpleasant, the alleged conditions of having insects in a cell is not below the constitutional

standard of the minimal civilized measures of life's necessities." (internal quotation marks

omitted)); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 467 (M.D. Pa. 2010) (concluding that a

prisoner's allegation that his cell was "infested with 'cockroaches, spiders, worms, [g]nats, mice

and other unknown insects'" fell short of demonstrating the existence of a substantial risk of

serious harm). Plaintiff's Eighth Amendment claims regarding conditions in cell 35 will, therefore,

be dismissed.

### e.    Issues with the Metal Bed Frame

Plaintiff also vaguely asserts that the bed slab had restraint brackets that ran across the

width of the bed "with bolts and eyelets that [rise] above the slab [by] inches." (ECF No. 1,

PageID.7.) He contends that sleeping on the slab without a mattress was "impossible." (*Id.*)

Nothing in the complaint, however, allows the Court to infer that Defendants have been

deliberately indifferent to a serious risk of harm by using these bed frames. Nothing in the

complaint permits the Court to infer that Defendants were even aware that the beds posed a risk of

harm to Plaintiff. *See Logan*, 2022 WL 325404, at *10 (concluding same regarding similar claim).

14

Moreover, it is not at all clear that an uncomfortable bed is anything more than a "routine discomfort." *See Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) ("Objectively speaking, sleeping on a steel bed without a mattress for eighteen days, though uncomfortable, is not so extreme as to violate contemporary standards of decency."); *Brooks v. Cnty. of Macomb*, No. 13-cv-15082, 2015 WL 4430190, at *9 (E.D. Mich. July 20, 2015) (concluding that the prisoner did "not establish that a jail official knew of or disregarded an excessive risk to her health and safety" by providing "low-set steel bed frames"). The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims regarding the bed frame.

### f.        Disruptions of Sleep and Daily Activity

Plaintiff also vaguely states that his sleep pattern was disrupted and that his "daily activity was affected with low energy, pain, fear, depression[,] and more." (ECF No. 1, PageID.7.) The Court recognizes that "sleep undoubtedly counts as one of life's basic needs." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). Plaintiff's vague allegation, however, does not rise to the level of an Eighth Amendment violation. His complaint is devoid of facts from which the Court could infer that any of the named Defendants were aware of issues affecting Plaintiff's sleep and "daily activity" and deliberately ignored them. Moreover, as discussed *supra*, Plaintiff's confinement in cell 35 and mattress restriction, which presumably contributed to the disruptions in sleep and energy, were temporary, and "temporary inconveniences" do not suffice to state an Eighth Amendment conditions-of-confinement claim. *See Powell*, 720 F. App'x at 228 (citing *Dellis*, 257 F.3d at 511). Plaintiff's Eighth Amendment claims premised upon disruptions to sleep and "daily activity" will, therefore, be dismissed.

### 2.      Medical Care

Plaintiff also contends that Defendant Leitheim denied his requests to speak with his psychiatrist. (ECF No. 1, PageID.5.) He also suggests that he did not receive medical care for insect bites and his aches and pains from sleeping on the floor. (*Id.*, PageID.7.)

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.,*

16

*Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

As an initial matter, nothing in the complaint leads the Court to a reasonable inference that any of the named Defendants were personally involved in the provision of or denial of medical care to Plaintiff for his bites and aches. Administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (concluding that custody officer was entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative

officials were not liable for overseeing and second-guessing care given by medical officials) (citing *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989)).

Moreover, nothing in the complaint permits the Court to infer that the insect bites Plaintiff suffered constituted a serious medical need. "Absent any allegation that the itching and bites were severe or anything out of the ordinary, an itch from insect bites does not rise to the level of harm necessary to demonstrate unconstitutional conditions of confinement." *Robinson v. Milwaukee Secure Det. Facility*, No. 15-C-263, 2016 WL 3620770, at *2 (E.D. Wis. June 29, 2016); *see also Fryer v. Ledvora*, No. 14 C 9199, 2017 WL 36445, at *5 (N.D. Ill. Jan. 4, 2017) ("Courts have been reluctant to hold that a spider bite is a serious medical need."). Likewise, nothing in the complaint permits the Court to infer that the aches and pains Plaintiff suffered during his time in cell 35 without a mattress constituted a serious medical need. "Not 'every ache or pain or medically recognized condition' constitutes a serious need." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 2008); *see also Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) (explaining that "minor aches and pains do not rise to the level of a serious medical condition"). Aches and pains are the "sorts of ailments for which many people who are not in prison do not seek medical attention." *Zentmyer v. Kendall Cnty., Ill.*, 220 F.3d 805, 810 (7th Cir. 2000) (quoting *Cooper*, 97 F.3d at 916). Plaintiff, therefore, cannot maintain Eighth Amendment claims regarding denial of care for insect bites and aches and pains.

Plaintiff also contends that Defendant Leitheim denied his requests to speak with his psychiatrist. (ECF No. 1, PageID.5.) The Eighth Amendment requires prison officials to provide medically necessary mental health treatment to prisoners. *See Estelle*, 429 U.S. at 103; *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at

* 2 (6th Cir. April 26, 1985). Plaintiff's claim, however, is entirely conclusory. He fails to allege facts suggesting that Defendant Leitheim was aware that Plaintiff required mental health treatment and deliberately denied those requests. Simply asking to see a psychiatrist and being denied is insufficient to maintain an Eighth Amendment claim. Plaintiff does not allege facts suggesting that he explained to Defendant Leitheim why he wanted to speak to a psychiatrist. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Accordingly, because Plaintiff fails to allege specific facts showing that Defendant Leitheim was deliberately indifferent to his mental health needs, this Eighth Amendment claim will be dismissed.

### 3.    Verbal Harassment

A liberal reading of Plaintiff's complaint leads the Court to conclude that he could be asserting an Eighth Amendment claim premised upon Defendant Leitheim telling him to "Just die!" (ECF No. 1, PageID.8.) The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (concluding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (finding that verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13,

1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Leitheim arising from his alleged verbal abuse.

### C.    Fourteenth Amendment Claims

Plaintiff also contends that Defendants violated his Fourteenth Amendment rights. (ECF No. 1, PageID.4.) Presumably, Plaintiff is basing his Fourteenth Amendment claims on his assertion that he was issued misconduct tickets, one of which he alleges was "fraudulent," and was denied the opportunity to participate in the initial hearings regarding those misconducts.[2]

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

---

[2] To the extent Plaintiff contends that his Eighth Amendment rights were violated by the allegedly fraudulent misconduct, the filing of an allegedly false misconduct report does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, No. 98-2139, 1999 WL 1021856, at *2 (6th Cir. 1999); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

MDOC policy provides that both disobeying a direct order and destruction or misuse of property are Class II misconducts. *See* MDOC Policy Directive 03.03.105, Attach. B (eff. Apr. 18, 2022). Class II misconducts are minor misconducts for which Plaintiff could not have been denied good time or disciplinary credits. *See id.*, ¶¶ C, Attach. D. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003).

Plaintiff also has not alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 486–87. Indeed, in this action, Plaintiff does not provide any allegations regarding the sanctions he received. Plaintiff, therefore, has failed to show that any sanction received was an "atypical" and "significant deprivation." *Id.* Likewise, to the extent Plaintiff was placed in segregation, his placement therein does not constitute an "atypical and significant"

deprivation. *Id.* at 484. In *Sandin*, the United States Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicated a liberty interest).

For the foregoing reasons, Plaintiff fails to state Fourteenth Amendment due process claims against Defendants. Such claims will, therefore, be dismissed.

### D.    Violation of MDOC Policy

Plaintiff also suggests that Defendant Metiva violated MDOC policy by not providing a cell inventory checklist to him. (ECF No. 1, PageID.8.) Section 1983, however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The only possibly way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause.

To demonstrate a due process violation, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no

federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519

(6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts,

however, have routinely recognized that a prisoner does not enjoy any federal protected liberty or

property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v.

Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir.

2001); *Sweeton*, 27 F.3d at 1164. Plaintiff's allegation that Defendant Metiva violated MDOC

policy regarding cell inventories, therefore, fails to raise a cognizable federal constitutional claim.

### E.      State Law Claims

Plaintiff asserts state law claims of negligence and intentional infliction of emotional

distress against Defendants. Claims under § 1983 can only be brought for "deprivations of rights

secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S.

922, 924 (1982). As noted *supra*, § 1983 does not provide redress for violations of state law. *Pyles*,

60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166. Plaintiff's assertion that Defendants violated state law,

therefore, fails to state a claim under § 1983.

Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely

by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court

will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d

514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law

claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383

U.S. 715, 726 (1966)); *see also Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 455

(6th Cir. 2021) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)

(recognizing that once a federal court no longer has federal claims to resolve, it "should not

ordinarily reach the plaintiff's state-law claims)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d

1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district

court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon*, 465 F.3d at 728 ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.") (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, in light of the Court's dismissal of the federal claims against Defendants, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction as to them. Accordingly, Plaintiff's state law claims against Defendants will be dismissed without prejudice.

<u>**Conclusion**</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is

barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   August 2, 2022                              /s/ Robert J. Jonker
                                                     Robert J. Jonker
                                                     United States District Judge